```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------- x
RASHAUNA LYNN WILSON,           :
                                :
        Plaintiff,              :
                                :
              v.                :   Civil No. 3:19-cv-1756(AWT)
                                :
FIRST ADVANTAGE BACKGROUND      :
SERVICES CORP. and UNITED PARCEL:
SERVICE,                        :
                                :
        Defendants.             :
------------------------------- x
```

## RULING ON MOTION TO DISMISS

Plaintiff Rashauna Lynn Wilson brings a claim against defendants First Advantage Background Services Corp. ("First Advantage") and a putative class-action claim against United Parcel Service ("UPS") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. UPS moves to dismiss the putative class claim against it pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons set forth below, the motion is being granted in part and denied in part.

**I.   FACTUAL ALLEGATIONS**

In or around November 2017, Wilson applied for a position with UPS. As part of that application, she signed a document authorizing UPS to obtain a consumer report for employment

---

[1] On June 11, 2020, UPS withdrew its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which argued that Wilson lacked standing.

purposes. After an in-person interview, Wilson was given a conditional offer of employment, contingent on her passing a background check. UPS requested a consumer report from First Advantage and First Advantage agreed to sell a report on Wilson to UPS on November 8, 2017. First Advantage eventually completed the report on or around December 15, 2017. The completed report included inaccurate statements and information about Wilson and her criminal history. The report included three criminal offenses that are actually attributable to a different individual.

First Advantage conducts background checks for UPS for hiring purposes. Wilson alleges that First Advantage offers a service in which it acts as an agent of the employer to execute all decisions regarding hiring eligibility based on criteria provided by the employer in advance. First Advantage then takes the information discovered during the background check, applies the employer's predetermined criteria, and reviews the applicant's eligibility for employment, making an "adjudication." First Advantage also commonly contracts with prospective employers to send pre-adverse action notices to consumers it has adjudicated on behalf of the employer. Wilson alleges that First Advantage sends those notices after it has already applied the employer's criteria to adjudicate the prospective employee's eligibility for employment. She alleges

that by the time First Advantage sends the pre-adverse action notice, "the consumer has already been disqualified from employment, promotion, or retention." (First Am. Compl. ("FAC") ¶ 23, ECF No. 13.) She alleges that UPS has contracted with First Advantage to engage in such a practice.

On or about December 19, 2017, First Advantage reviewed the report and determined that Wilson was "ineligible" for employment with UPS. (Id. ¶ 36.) On December 20, 2017, First Advantage mailed to Wilson on behalf of UPS "a purported 'pre-adverse action notice'" and a copy of the report that First Advantage had prepared and delivered to UPS. (Id. ¶ 37.) Wilson claims that prior to sending the purported pre-adverse action notice, UPS had already taken an adverse action against her, as defined by the FCRA. She alleges that UPS adopted First Advantage's adjudication as its own "without any further process being provided to [her]." (Id. ¶ 39.) She alleges that in reality by December 19, 2017, and prior to the mailing of any notice to her, UPS had removed her from consideration for employment based on the consumer report prepared by First Advantage and the determination by First Advantage that, based on UPS's criteria, Wilson was ineligible for employment. So by the time Wilson received the purported pre-adverse action notice, she had already been removed from the hiring pool for the job for which she applied.

**II.   LEGAL STANDARD**

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citations omitted).

However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Id. at 568.  "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight

of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

**III. DISCUSSION**

UPS moves to dismiss on the grounds that Wilson fails to state a claim for violation of the FCRA by it, and that if she does state a claim, she also fails to state a claim that UPS's violation of the FCRA was willful.  The court denies the motion to dismiss as to the underlying FCRA claim and concludes that Wilson states a claim against UPS under the FCRA.  However, the court grants the motion to dismiss as to the claim that UPS willfully violated the FCRA.

    **A.**    **Failure to Provide Pre-Adverse Action Notice**

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007).  The FCRA broadly covers consumer reports, including background checks used for various purposes, including employment purposes.  The Supreme Court has read the FCRA's provisions cognizant of the "ambitious objective set out in the Act's statement of purpose, which uses expansive terms to describe the adverse effects of unfair and inaccurate credit reporting and the responsibilities of consumer reporting agencies."  Id. at 62.

Among its many requirements, the FCRA requires that persons intending to take adverse action for employment purposes against a consumer based on information obtained in the consumer report

provide that consumer with a pre-adverse action notice.  It provides in relevant part that:

> in using a consumer report for employment purposes, before taking any adverse action in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report; and . . . a description in writing of the rights of the consumer. . . .

15 U.S.C. § 1681b(b)(3)(A).  This provision does not prohibit an employer from taking adverse action based on the report. Rather, the pre-adverse action requirement merely slows down the process and "afford[s] employees time to 'discuss reports with employers or otherwise respond before adverse action is taken.'" Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) (quoting Lynne B. Barr & Barbara J. Ellis, The New FCRA: An Assessment of the First Year, 54 Bus. Law. 1343, 1348 (1999)).  The FCRA defines "adverse action," in relevant part, as:

> (ii) a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee . . . [and]
> (iv) an action taken or determination that is—
>> (I) made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 604(a)(3)(F)(ii); and
>> (II) adverse to the interests of the consumer.

15 U.S.C. § 1681a(k)(1)(B).[2]

This motion to dismiss turns on when, based on the factual allegations in the First Amended Complaint, that adverse action occurred in this case. Wilson claims that UPS failed to comply with the pre-adverse action requirement because it had already taken an adverse action against her through its agent before the purported pre-adverse action notice was sent. She alleges that UPS eliminated her from consideration for employment when First Advantage made its December 19, 2017 "scoring" or "adjudication" of Wilson's application as ineligible. The purported pre-adverse action notice was not sent until December 20, 2017.

UPS argues that an adverse action is taken by an employer only when the adverse decision takes effect or is communicated. It asserts that its adoption of First Advantage's scoring or adjudication with respect to Wilson does not constitute an adverse action because it was merely an internal formulation of an intent to take adverse action. UPS contends that, in this case, the adverse action did not occur until Wilson failed to respond to the pre-adverse action notice and she was removed

---

[2] Courts have concluded, and UPS appears to concede here, that the catch-all provision of clause (iv) also applies to employment decisions. (See Def. United Parcel Service Inc.'s Mem. Law Supp. Its Mot. Dismiss Count I of the First Am. Compl. ("UPS Mem.") 17-18, ECF No. 43-1.)

from consideration for employment, which took effect with a letter sent communicating UPS's decision on December 27, 2018.

UPS relies principally on Obabueki v. International Business Machines Corp., 145 F. Supp. 2d 371 (S.D.N.Y. 2001), aff'd, 319 F.3d 87 (2d Cir. 2003), which it says is binding precedent because it was affirmed by the Second Circuit.  In Obabueki, the plaintiff brought a claim for violation of the FCRA against IBM, his prospective employer.  The plaintiff contended that IBM had already taken an adverse action against him prior to sending him a pre-adverse action notice because it had already made an internal decision to rescind the offer.  The court concluded, based on the text of the FCRA (specifically 15 U.S.C. § 1681a(k)(1)(B)(ii)), that "[a]n internal decision to rescind an offer is not an adverse action." Id. at 391.  The court concluded that the "plaintiff's position that forming an intent to withdraw an employment offer is an adverse action is legally unsupportable." Id. at 392.  The court reasoned that "IBM's internal discussions had no impact on plaintiff; only when its staff acted by letter did IBM take any action," and queried "how can an employer send an intent letter without having first formed the requisite intent?" Id.

In Jones v. Halstead Mgmt. Co., 81 F. Supp. 3d 324 (S.D.N.Y. 2015), the court found Obabueki distinguishable "because the parties failed to bring the catchall provision to

the Court's attention so the Court did not consider whether forming an internal intent is an 'adverse action' under that provision." Id. at 335 n.17.

Also, with respect to the defendant's contention that Obabueki is binding precedent, the court of appeals stated in a per curiam opinion affirming the grant of a motion for summary judgment: "Upon consideration of all of plaintiff's arguments on appeal, we affirm on the opinions of Judge Schwartz . . . reported at 145 F. Supp. 2d 371 . . . ." 319 F.3d at 88. The court of appeals did not address the questions presented by the factual scenario alleged here. Nor did the district court. The material facts in Obabueki included the following:

> On or about October 5, 1999, IBM received a report from Choicepoint . . . which reflected plaintiff's welfare fraud conviction (the "First Report"). However, the report failed to mention the dismissal of the conviction. Upon receiving the First Report, [the IBM manager] contacted plaintiff and advised him of its contents. Plaintiff responded that the conviction had been vacated and the case dismissed, and provided [the IBM manager] with a copy of the California Order. However, plaintiff did not explicitly state that the conviction had been "expunged" or "sealed."
>
> Several IBM employees then reviewed plaintiff's candidacy in light of the First Report and the California Order. Each of them concluded that plaintiff should have disclosed his conviction on the [application]. . . . [IBM] determined that the trust necessary to initiate an employment relationship did not exist, and decided to withdraw plaintiff's conditional offer as a result of his alleged misrepresentation . . . . The underlying facts concerning plaintiff's former conviction were not discussed or factored into the decision; IBM contends

> that the job offer was withdrawn because plaintiff
> lied on his employment application.
>
> On or about October 13, 1999, [the IBM manager] called
> plaintiff and told him that IBM intended to withdraw
> its conditional offer of employment. By letter dated
> October 13, 1999, IBM informed plaintiff that it
> "intend[ed] not to employ [him] based in part on
> information contained in [the First Report]." . . .
> While plaintiff contacted Choicepoint concerning the
> problems he perceived with the First Report, over the
> next several days he was unable to present additional
> evidence concerning the dismissal of his conviction
> necessary to prompt a reconsideration by IBM of its
> intended decision to withdraw the offer. By letter
> dated October 18, 1999, IBM informed plaintiff that
> the offer was formally withdrawn.

145 F. Supp. 2d at 377-78 (citations and footnotes omitted). Thus, the facts in Obabueki, developed at the summary judgment stage, are materially different from the facts alleged here. The court in Obabueki found that there was no genuine issue of material fact as to whether IBM had actually acted to withdraw the plaintiff's conditional offer of employment prior to sending the pre-adverse action notice. See id.; see also id. at 392 n.30 (concluding that emails reflected only an intention to withdraw the conditional offer, not an actual withdrawal).

UPS also relies on Dahy v. FedEx Ground Package System, Inc., No. CV 17-1633, 2018 WL 4328003 (W.D. Pa. Aug. 3, 2018), report and recommendation adopted, No. 2:17-CV-1633, 2018 WL 4323808 (W.D. Pa. Sept. 10, 2018), where the court concluded that "neither the adjudication of ineligible, nor [the defendant employer's] adoption of the adjudication had any effect on [the

-11-

plaintiff's] opportunity to challenge information in his background report and possibly avoid an ultimate adverse action." Id. at *6.  The court stated, on facts similar to those alleged here, that "the 'timing of the pre-adverse action notice' occurring after First Advantage's adjudication and FedEx's adoption of the adjudication 'is precisely the timing envisioned by the FCRA.'"  Id. (quoting Williams v. First Advantage LNS Screening Sols., Inc., 155 F. Supp. 3d 1233, 1247 (N.D. Fla. 2015)).  However, the conclusion in Dahy appears to be in tension with its acknowledgment that the plain terms of the statute that the pre-adverse action notice requirement "requires notice to the consumer before the employer actually takes such adverse action," id. (quoting Costa v. Family Dollar Stores of Va., Inc., 195 F. Supp. 3d 841, 844 (E.D. Va. 2016)), and that "[a]n 'adverse action occurs when the decision is carried out, when it is communicated or actually takes effect,'" id. at *4 (emphasis added) (quoting Burghy v. Dayton Racquet Club, Inc., 695 F. Supp. 2d 689, 703 (S.D. Ohio 2010)).

    Thus, Obabueki is not directly on point, and the court finds unpersuasive the reasoning in Dahy.  Wilson alleges facts which show that the adverse action by UPS occurred when she was "removed . . . from hiring consideration based upon the First Advantage consumer report, which adjudicated her as being 'ineligible' for employment with UPS."  (FAC ¶ 38.)  To

demonstrate that this is so, she further alleges that the arrangement between UPS and First Advantage was that UPS adopted as its own the scoring or adjudication by First Advantage without any further process being afforded consumers, (id. ¶ 39); that "First Advantage mailed to [her] on behalf of UPS a purported 'pre-adverse action notice,'" (id. ¶ 37); and that "UPS drives this adjudication by providing criteria to First Advantage as to what aspects of an applicant's background or criminal history would make that person ineligible for employment at UPS," (id. ¶ 40).  Consequently, Wilson alleges facts which show that although the action was not communicated to her until the December 27 letter, it had already taken effect at that time.  If Wilson's allegations are true--and the court must assume they are true for the purposes of ruling on a Rule 12(b)(6) motion--then they arguably state "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," 15 U.S.C. § 1681a(k)(1)(B)(ii), and clearly state an "action taken or determination made that is . . . adverse to the interest of the consumer," in violation of the FCRA, id. § 1681a(k)(1)(B)(iv); see Rosario v. Starbucks Corp., No. C16-1951 RAJ, 2017 WL 4811493, at *1, *4 (W.D. Wash. Oct. 25, 2017) (allegation that defendant "removed Plaintiff from hiring consideration" before credit-reporting agency mailed the pre-

adverse action notice states a plausible claim under FCRA); Moore v. Rite Aid Hdqtrs Corp., No. CIV.A. 13-1515, 2015 WL 3444227, at *5 (E.D. Pa. May 29, 2015) (allegation that "once an applicant was adjudicated as ineligible/non-competitive, [the defendant] automatically removed that applicant from the 'hire' track and, as a matter of custom and practice, actually rejected the applicant at that time" was "sufficient to state a claim for relief under § 1681b(b)(3)(A)"); Geter v. ADP Screening & Selection Servs., Inc., No. 2:14-CV-3225 WJM, 2015 WL 1867041, at *6 (D.N.J. Apr. 23, 2015) (complaint "sufficiently alleges that [the defendant's] employment decision actually took effect upon completion of [the consumer-reporting agency's] adjudication and that the opportunity to provide information was a mere formality"); Jones, 81 F. Supp. 3d at 335 (denying motion to dismiss because there were "questions of fact regarding the actual state of decision-making at [the defendant] that the Court cannot resolve on a motion to dismiss").

UPS makes two additional arguments. First, UPS argues that the documents on which Wilson's complaint relies show that UPS complied with the FCRA and did not adopt First Advantage's determination of Wilson's eligibility. But as Wilson points out, the inferences that UPS draws from the documents do not render Wilson's factual allegations implausible. These documents simply create issues of fact which cannot be resolved

on a motion to dismiss.  The fact that the pre-adverse action notice stated that UPS would consider information to contest the adjudication is not dipositive.  "An employer cannot satisfy § 1681b(b)(3) by formally designating some future point in time as the moment of 'final decision' if, in fact, that decision already has been made." Moore v. Rite Aid Hdqtrs Corp., 33 F. Supp. 3d 569, 574 (E.D. Pa. 2014).

Second, UPS argues that First Advantage's adjudication was only one step in a multi-part process of determining whether UPS would hire Wilson.  However, Wilson's claim is not that First Advantage's scoring in and of itself was an adverse action.  Her claim is that she was "removed . . . from hiring consideration based upon the First Advantage consumer report, which adjudicated her as being 'ineligible' for employment with UPS." (FAC ¶ 38.)

**B.   Willful Violation of the FCRA**

The FCRA provides that any person who "willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer" is liable to the consumer, inter alia, either for her actual damages or statutory damages of between $100 and $1,000.  15 U.S.C. § 1681n(a).[3]  The term willful, not defined by the FCRA, is given the common law understanding of

---

[3] For a negligent violation of the FCRA, a plaintiff may recover actual damages only.  15 U.S.C. § 1681o(a).

-15-

the term. See Safeco, 551 U.S. at 69. The definition therefore covers "not only knowing violations of a standard, but reckless ones as well." Id. at 57.

"[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69. To commit a willful violation, a company's reading of the statute must be "objectively unreasonable." See id. at 69-70; Bhutta v. Vanchoc Transp. Inc., 407 F. Supp. 3d 152, 156 (E.D.N.Y. 2018). In Safeco, the Court assessed three factors in determining whether the defendant's reading of the FCRA was objectively unreasonable: (1) whether the FCRA was silent on the issue; (2) whether the defendant's reading of the statute "has a foundation in the statutory text"; and (3) whether the courts of appeals or the Federal Trade Commission had offered guidance on the issue. See 551 U.S. at 69-70. "Courts have specifically held that defendants' Safeco based arguments regarding the reasonableness of their statutory interpretation are grounds upon which to grant a motion to dismiss." Kivo v. Blumberg Exelsior, Inc., 982 F. Supp. 2d 217, 220 (E.D.N.Y. 2013) (quoting Simonoff v. Kaplan, Inc., No. 10 CIV. 2923 LMM, 2010 WL 4823597, at *3

(S.D.N.Y. Nov. 29, 2010)). Thus, "a finding that [the defendant's] reading of the statute is objectively reasonable would be sufficient grounds upon which to grant [its] motion to dismiss." Simonoff, 2010 WL 4823597, at *3.

With respect to the first Safeco factor, the FCRA clearly states that UPS, as a condition of using the consumer report for employment purposes, was required "before taking any adverse action in part on the report" to provide to Wilson "a copy of the report" and "a description in writing of the rights of the consumer." 15 U.S.C. § 1681b(b)(3)(A). An "adverse action" includes "a denial of employment or any other decision for employment purposes that adversely affects" the employee or "an action taken or determination that is . . . adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B). Thus, the FCRA is not silent as to whether taking adverse action prior to sending a pre-adverse action notice (as Wilson alleges here) violates the FCRA.

But considering the second and third Safeco factors, the court cannot find that UPS's reading of the FCRA is objectively unreasonable. UPS's interpretation of Obabueki's guidance as to the timing of an adverse action under the FCRA was not objectively unreasonable. UPS's position that its alleged actions fit within Obabueki's definition of an "internal decision" to rescind an offer has a foundation in the statutory

text and Obabueki's holding. Also, there is apparently no guidance with respect to the specific issue here from the FTC or any courts of appeal other than the Second Circuit's summary affirmance in Obabueki. District courts have offered split guidance on this specific issue. Compare, e.g., Dahy, 2018 WL 4328003, at *6; and Obabueki, 145 F. Supp. 2d at 391, with, e.g., Rosario, 2017 WL 4811493, at *4; and Moore, 2015 WL 3444227, at *5; and Geter, 2015 WL 1867041, at *6; and Jones, 81 F. Supp. 3d at 335. In light of the foregoing, UPS's reading of the FCRA did not run "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69.

## IV. CONCLUSION

For the reasons set forth above, Defendant United Parcel Service, Inc.'s Motion to Dismiss Count I of the First Amended Complaint (ECF No. 43) is hereby GRANTED in part and DENIED in part. The claim that UPS willfully violated the FCRA is dismissed.

It is so ordered.

Dated this 30th day of September 2020, at Hartford, Connecticut.

                                      /s/AWT
                              Alvin W. Thompson
                      United States District Judge